# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01425-SCT

*BOLIVAR COUNTY, MISSISSIPPI*

*v.*

*WAL-MART STORES, INC. AND TOWN OF WINSTONVILLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/1998 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN E. GRIFFITH |
| | DANIEL JUDSON GRIFFITH |
| ATTORNEY FOR APPELLEES: | WILLIAM O. LUCKETT, JR. |
| | F.G. JACK BOBO |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/21/1999 |
| MOTION FOR REHEARING FILED: | 10/27/99; denied 2/1/2001 |
| MANDATE ISSUED: | 2/8/2001 |

## BEFORE PRATHER, C.J., MILLS AND COBB, JJ.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Bolivar County appeals from the judgment entered against it in the Bolivar County Circuit Court and in favor of Wal-Mart Stores, Inc. (Wal-Mart) and the Town of Winstonville. Bolivar County claims that emergency charges made by the Town of Winstonville, although authorized by the Bolivar County Civil Defense, were not spread upon the Bolivar County Board of Supervisor's minutes; and therefore, the County is not obligated to Wal-Mart for Winstonville's charges because a Board of Supervisors can act only through its minutes. This Court disagrees with Bolivar County and affirms the judgment of the circuit court.

### STATEMENT OF THE FACTS

¶2. This case was brought before the Circuit Court of Bolivar County on appeal after trial in the County Court of Bolivar County. After reviewing the county court record, Circuit Court Judge Elzy J. Smith, Jr. made detailed findings of fact which are well-supported by the record. This Court adopts verbatim Judge Smith's findings of fact as set forth herein:

**Facts based upon the record as made in the county court.**

The facts as found by the county court are not disputed by any of the parties and this court defers to the findings of fact made by the Bolivar County court which are herein set forth. In February, 1994, the Mississippi Delta was the victim of a severe ice storm. The path of the storm included Bolivar County and the town of Winstonville. All parties and this court are well aware of the crippling effect of this devastating ice storm. As a result of this natural disaster, a special meeting was called by Bolivar County Board of Supervisors ("Board") for the purpose of adopting, enforcing and implementing "such orders, rules and regulations as may be necessary for emergency management purposes, *in accordance with Bolivar County's Emergency Management Plan and the Mississippi Emergency Management Law, Miss. Code Ann. Sections 33-15-1, et. seq.* (Supp. 1980)..." On February 14, 1994, the Board proclaimed a state of emergency as a result of the ice storm that hit on or about February 10, 1994. A state of emergency was continued by further proclamations on February 22, 1994, and March 1st, 9th, and 17th, 1994.

During this state of emergency the Bolivar County Civil Defense had a charge account with Plaintiff, Wal-Mart. The Director, Kent Buckley, and Deputy Director, Lee Tedder, were the two persons authorized to charge on that account. The Bolivar County Civil Defense was coordinating the relief effort for the emergency in Bolivar County which includes the town of Winstonvillle. The Deputy Director was authorized to act on behalf of the Bolivar County Civil Defense in the absence of the Director.

As a result of the ice storm, Mayor Tutwiler, the mayor of Winstonville, approached the Bolivar County Civil Defense office on February 13, 1994, with a list of emergency items he was seeking as a result of the ice storm. The list included flash lights, batteries, candles, generator, chain saws, axes, ice, water, hatchets and boots. While at the Civil Defense office, the mayor received authorization from Lee Tedder to use the Bolivar charge account at Wal-Mart. The authorization dated February 13, 1994, at 9:40 a.m. provided, "Charge the items that the town of Winstonville needs to the Bol. Co. Civil Defense." The exhibit is signed by L. Tedder and is on Bolivar County Emergency Operations letterhead.[1] Mayor Tutwiler then presented the written authorization to the manager of Wal-Mart. The assistant manager of Wal-Mart, at the direction of the manager, called the Bolivar County Civil Defense office and confirmed that the mayor would be allowed to charge items to that account. According to the charge slips marked as plaintiff's exhibit 1, the town of Winstonville proceeded to charge $19,652.42 worth of items for relief from the ice storm between February 14 and February 23, 1994. There was no evidence as to when the account between Bolivar county and Wal-Mart was opened; whether the opening of the original account was spread across the county minutes; or whether there were any past, concurrent or subsequent transactions on this account other than the ones in dispute. However, based on the record made in the county court, all disputed purchases and charges were made during the declared state of emergency.

A disagreement eventually arose between Bolivar County and the town of Winstonville as to who was responsible for reimbursing Wal-Mart for the items purchased on the Bolivar County Civil Defense Account. On March 4, 1994, the Board's attorney, Mr. Ben Griffith, wrote to the mayor stating that all the items purchased by the town on the county's account were the responsibility of the town of Winstonville. The letter noted that the county would be glad to assist the town in completing the necessary documents to secure reimbursement under the FEMA guidelines. The letter concluded by directing the town to pay the Wal-Mart invoices and retain the paperwork so reimbursement could be sought. There was no response by Winstonville.

Wal-Mart sent a demand for payment to Bolivar County and Winstonville. Bolivar county admits it received Wal-Mart's demand for payment and took the position it was not liable for the outstanding account balance. Winstonville likewise received a demand letter and refused liability (Record Excerpt #7, p,. 182). Wal-Mart sued both the town of Winstonville and Bolivar County on an open account theory, each defendant denied any obligation. The county court entered judgement in favor of Bolivar county and against Wal-Mart. As to Winstonville, judgement was entered in favor of Wal-Mart for $19,652.42 and attorney's fees.

¶3. On appeal, the Circuit Court of Bolivar County reversed the judgment of the County Court of Bolivar County, holding that the Emergency Management Law governs during a state of emergency, and Miss. Code Ann. § 31-7-13(k) "does not control or address the issue of a Board's ability and power to incur obligations, contract, make emergency purchases or appropriate and expend public funds during a declared state of emergency pursuant to the Emergency Management Act." The circuit court held, pursuant to the Emergency Management Law, that Bolivar County was obligated to pay for the purchases authorized by the Deputy Director during the state of emergency; and, therefore, the circuit court reversed the judgment of the county court as to Bolivar County and Winstonville. The final judgment in the circuit court therefore, was as follows:

> Therefore, for the reasons set forth herein, the county court judgment is reversed, and judgement is hereby entered in favor of Wal-Mart and against Bolivar County in the amount of $19,652.42 plus $6,550.81 for reasonable attorney's fees; as to the claim against the Town of Winstonville, judgment is entered in favor of Winstonville and against Wal-Mart.

¶4. It is from this judgment of the Bolivar County Circuit Court that Bolivar County appeals assigning as error the following issue:

**WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT THE MINUTE BOOK ORDER RULE EMBODIED IN THE EMERGENCY PURCHASE PROVISION OF THE MISSISSIPPI PUBLIC PURCHASE LAW WAS INAPPLICABLE UNDER THE MISSISSIPPI EMERGENCY MANAGEMENT ACT.**

## DISCUSSION

¶5. Although the central issue in this case is who must pay Wal-Mart for the $19,652.42 worth of charges to the Bolivar County charge account, the issue presented to this Court is not a factual determination of who actually owes the money, but what statutes govern in an emergency situation and how they should be construed. The determination of that issue will, in turn, determine who is liable for the debt to Wal-Mart.

¶6. Bolivar County asserts that the Mississippi Emergency Management Act, Miss. Code Ann. §§ 33-15-1 through 33-15-53 (1990 & Supp. 1999), must be read in conjunction with and *in pari materia* with Miss. Code Ann. § 31-7-13(k). That was the holding of the county court, which entered judgment in favor of Bolivar County. Conversely, Wal-Mart and the Town of Winstonville assert that the statutes cannot be reconciled and must be read separately with the Mississippi Emergency Management Law governing in the event of a declared state of emergency. That was the holding of the circuit court.

*A. Disposition in the County Court of Bolivar County*

¶7. Judge Beckett of the County Court of Bolivar County made extensive findings of fact and conclusions of law. In her conclusions of law she first noted that a Board of Supervisors can act only through its minutes. ***Butler v. Board of Supervisors***, 659 So. 2d 578, 582 (Miss. 1995); ***Board of Supervisors v. Dawson***, 200 Miss. 666, 45 So. 2d 253, 256 (1950). Additionally, we have ruled that a board's "minutes are the exclusive evidence of what the board did, and that parol evidence is not admissible to show what actions the board took." ***Myers v. Blair***, 611 So. 2d 969, 972 (Miss. 1992) (quoting ***Noxubee County v. Long***, 141 Miss. 72, 106 So. 83, 86 (1925)). Judge Beckett looked to Miss. Code Ann. § 31-7-13(k) and found that "when a state of emergency is proclaimed by a county or governing authority, normal or ordinary bid requirements can be waived in regard to purchases of commodities or repair contracts for the benefit of the governing authority." However, when waiver takes place, "...any officer or agent of such governing authority having general or special authority therefor in making such purchase or repair shall approve the bill presented therefor, and he shall certify in writing thereon from whom such purchase was made, or with whom such a repair contract was made. At the board meeting next following the purchases or repair contract, documentation of the purchase or repair contract, including a description of the commodity purchases, the price thereof and the nature of the emergency <u>shall</u> be presented to the board and <u>shall</u> be placed on the minutes of the board of such governing authority." Miss. Code § 31-7-13(k) (Supp. 1999) (emphasis added).

¶8. The county court found first, that these procedures were followed neither by Wal-Mart nor the Town of Winstonville; second, that the Bolivar County Emergency Operations Office was not aware of the charges made at Wal-Mart until it was later notified by Wal-Mart; and third, because there was no contract entered upon the minutes of the Board there was no liability on the part of Bolivar County. The county court held that it was the responsibility of Wal-Mart to ensure the contract with Bolivar County was legal and properly entered upon the minutes of the Board, and having failed, there was no agreement to which Bolivar County could be bound. The county court dismissed the complaint against Bolivar County and held that the Town of Winstonville was responsible for the debt. The court subsequently entered judgment against the Town and in favor of Wal-Mart in the amount of $19,652.44, plus court costs and attorney's fees.

### B. Disposition in the Circuit Court of Bolivar County

¶9. The outcome of the case in the Circuit Court of Bolivar County was quite different than that in the County Court. Judge Smith of the Circuit Court of Bolivar County reversed the judgment of the county court and entered judgment "in favor of Wal-Mart and against Bolivar County in the amount of $19,652.42 plus $6,550.81 for reasonable attorney's fees; as to the claim against the town of Winstonville, judgment is entered in favor of Winstonville and against Wal-Mart." Therefore, Wal-Mart was left to collect the debt from Bolivar County.

¶10. Judge Smith held that the county court incorrectly applied Miss. Code Ann. § 31-7-13(k) to the case, when the proper statute to be applied was Miss. Code Ann. §§ 33-15-1 *et seq.* as noted in the minutes of the Board's declaration of a state of emergency. Judge Smith noted that the account that is the basis of this action was an open account at Wal-Mart for the benefit of Bolivar County. Citing ***Butler***, 659 So. 2d 578 at 579, the circuit court correctly noted that "'stare decisis and public policy'" dictate that an order duly entered or spread across the board's minutes is required for purposes of making expenditures of public funds by the county board of supervisors." Bolivar County refers to this as the minute book order requirement and argues that the minute book order requirement is applicable even during a state of emergency declared pursuant to Miss. Code Ann. § 31-7-13(k). Judge Smith found to the contrary,

holding that the Emergency Management Law governs during a state of emergency and Miss. Code Ann. § 31-7-13(k) "does not control or address the issue of a board's ability and power to incur obligations, contract, make emergency purchase or appropriate and expend public funds during a declared state of emergency pursuant to the Emergency Management Act." The circuit court held that, pursuant to the Emergency Management Law, Bolivar County was obligated to pay for the purchases authorized by the Deputy Director during the state of emergency.

¶11. The circuit court was correct in holding that the Emergency Management Law governs in a declared state of emergency. The Law is found at Miss. Code Ann. § 33-15-1 through 33-15-53 (1990 & Supp.1999), and it states in pertinent part:

### § 33-15-17. Local organization of emergency management.

(b) In carrying out the provisions of this Article, each county and municipality, or the two (2) acting jointly, or two (2) or more counties acting jointly, where there is joint organization, in which any disaster as described in section 33-15-3 occurs, *shall have the power to enter into contracts and incur obligations necessary to combat such disaster, protecting the health and safety of persons and property and providing emergency assistance to the victims of such disaster. Each county and municipality is authorized to exercise the powers vested under this section in the light of the exigencies of the extreme emergency situation without regard to time consuming procedures and formalities prescribed by law pertaining to the performance of public work, entering into contracts, the incurring of obligations, the employment of temporary workers, the rental of equipment, the purchase of supplies and materials, the levying of taxes, and the appropriation and expenditure of public funds.*

(c) Each county and each municipality, or two (2) or more counties acting jointly, shall have the power and authority:

(1) to appropriate and expend funds, make contracts, obtain and distribute equipment, materials and supplies for emergency management purposes; provide for the health and safety of persons and property, including emergency assistance to the victims of any enemy attack or manmade, technology or natural disasters; and to direct and coordinate the development of emergency management plans and programs in accordance with the policies and plans set by the federal and state emergency management agencies.

Miss. Code Ann. § 33-15-17 (Supp. 1999) (emphasis added).

¶12. The statute that Bolivar County suggests as controlling for the procedure mandated in emergency situations is Miss. Code Ann. § 31-7-13(k) and reads as follows:

(k) If the governing authority, or the governing authority acting through its designee, shall determine that an emergency exists in regard to the purchase of any commodities or repair contracts, so that the delay incident to giving opportunity for competitive bidding would be detrimental to the interest of the governing authority, then the provisions herein for competitive bidding shall not apply and any officer or agent of such governing authority having general or special authority therefor in making such purchase or repair shall approve the bill presented therefor, and he shall certify in writing thereon from whom such purchase was made, or with whom such a repair contract was made. At the board

meeting next following the emergency purchase or repair contract, documentation of the purchase or repair contract, including a description of the commodity purchase, the price thereof, and the nature of the emergency shall be presented to the board and shall be placed on the minutes of the board of such governing authority.

¶13. The circuit court was correct, not only in its holding, but also in its articulate reasoning. It is obvious from the language of the Emergency Management Law found at Miss. Code Ann. § 33-15-17, that it is the controlling statute in times of emergency. The specific language of the Law states that counties "shall have the power to enter into contracts and incur obligations necessary to combat such disaster, protecting the health and safety of persons and property and providing emergency assistance to the victims of such disaster." The statute states that these obligations may be incurred absent the formalities mandated elsewhere. Therefore, to require the Act to be read *in pari materia* with Miss. Code Ann. § 31-7-13(k), which is found in Chapter 7 of the Mississippi Code entitled "Public Purchases", would be to defeat the purpose of the Act. Miss. Code Ann. § 31-7-13(k) deals with emergency purchases and allows some leeway for those making the purchases when circumvention of the statutory procedures would be beneficial to the governing authority. That section requires that the statutorily mandated procedures be delayed instead of being forgiven as the Law allows. The Law recognizes that in emergency situations the statutorily mandated procedures need not be complied with because of the urgency of the situation. The "Public Purchases" section, Miss. Code Ann. § 31-7-13(k), has been discussed by this Court in terms of purchases of commodities and repair contracts once the emergency situation threatening harm to persons and property has passed. For example, in *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271 (Miss. 1987), a tornado struck a Hancock County elementary school. The Hancock County School Board met and declared an emergency. This Court discussed Miss. Code Ann. § 31-7-13(k) in a footnote as the "emergency procedures provision". 512 So.2d at 1274-75 n.l. However, in *Pittman*, the elementary school building had been destroyed and the emergency was getting the children back into school so that their education would not be delayed. Whereas in the case *sub judice*, the emergency was getting food, water, blankets, electricity and other necessities to the citizens of Bolivar County - - those in Winstonville, as well as those in surrounding areas. Although this Court has referred to the "Public Purchases" section of the Mississippi Code as the emergency purchases section, the Emergency Management Law deals specifically with emergency situations and it cannot be read *in pari materia* with other statutes, especially where it specifically disregards the governance of other statutes. *See* Miss. Code Ann. § 33-15-17(b).

## CONCLUSION

¶14. The Mississippi Emergency Management Law is not to be read *in pari materia* with Miss. Code Ann. § 31-7-13(k). Therefore, the formal procedures required for a Board of Supervisors to act were waived, and the liability incurred by the Town of Winstonville on authorized charges to the Bolivar County charge account at the Cleveland, Mississippi, Wal-Mart falls properly upon the shoulders of Bolivar County. The judgment of the Bolivar County Circuit Court is affirmed.

¶15. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. SMITH, J., NOT PARTICIPATING.**

## McRAE, JUSTICE, DISSENTING:

¶16. There is no reason why, even in an emergency, that county and municipal governments should be given carte blanche to spend the taxpayers' money without any accountability whatsoever. While Miss. Code Ann. § 33-15-3 (Supp. 1999) allows political subdivisions to work together in an emergency, the statute does not permit governmental entities to ignore the requirements of Miss. Code Ann. § 31-7-13(k) (Supp. 1999). Because I believe the statutes can and should be read together, I dissent.

¶17. "In construing statutes, all statutes in pari materia are taken into consideration, and a legislative intent deduced from a consideration as a whole." *Roberts v. Mississippi Republican Party State Executive Comm*., 465 So.2d 1050, 1052 (Miss.1985). Both Miss. Code Ann. § 31-7-13(k) and §§ 33-15-1 et seq. deal with governmental entities' power to make purchases in emergency situations. Not only **can** the statutes be construed together, the facts of this case illustrate why the two statutes **should** be read togther - - without the requirements contained in section 31-7-13(k), local governments have no checks and balances on their expenditures.

¶18. In this case, when the ice storm of the February, 1994, paralyzed the Mississippi Delta, the Bolivar County Board of Supervisors convened to proclaim a state of emergency. In order to facilitate emergency relief efforts, the Board of Supervisors opened up a charge account at a Wal-Mart in Cleveland, Mississippi, and authorized two persons with the Bolivar County Civil Defense Office to make purchases. One of these persons was Lee Tedder.

¶19. On February 13, 1994, the Mayor of the Town of Winstonville came to the Bolivar County Civil Defense Office with a list of items needed by his town including a generator, flash lights, candles, ice, and batteries. Tedder gave the Mayor a letter on the Civil Defense Board stationery which read: "Charge the items that the Town of Winstonville needs to the Bolivar County Civil Defense." The Mayor took the letter to Wal-Mart and, after the store verified by phone that he was authorized to do so, allowed the Mayor to charge items totaling $164.36. The Mayor kept the letter, and in the following days he and/or his representatives charged a total of $19,652.42 to the County's account.

¶20. The county court acted as the trier of fact in this case and it found that the Town of Winstonville was not authorized to make purchases beyond the initial expenditure of $164.36. This being so, I find nothing in the law which would make Bolivar County liable for purchases made by the Town of Winstonville on the County's account where those charges were not authorized by the County.

¶21. Accordingly, I dissent.

## SULLIVAN, P.J., JOINS THIS OPINION.

1. At trial, Bolivar county disputed the authorization set out in Plaintiff's Exhibit 4 and claimed the only authorization given by Lee Tedder was Plaintiff's Ex. 5 which provided, "Charge the items that the town of Winstonville needs to them. Bol Co. Civil Defense." The county court which conducted the hearing and observed the witnesses found to the contrary. This court defers to the county court's factual determination on that issue.