CARLSON, Presiding Justice,
for the Court:
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.
¶ 2. After Hurricane Katrina hit the Mississippi Gulf Coast in August 2005, W.C. Fore[1] entered into a contract with Harrison County, Mississippi, to remove the large amount of debris that was left behind. The Mississippi State Tax Commission (MSTC)[2] then assessed a fee of $1.00 per ton of debris removed. Fore appealed the assessment to the MSTC Board of Review, claiming that the fee did not apply to emergency waste removal. The Board of Review upheld the assessment. Fore appealed the Board of Review’s decision to the MSTC Full Commission,[3] which also affirmed the assessment. Fore then appealed to the Harrison County Chancery Court, First Judicial District. The chancery court upheld the assessment, and Fore has now appealed to this Court. Finding that the MSTC’s and the chancery court’s findings were supported by substantial evidence and that there was no misapprehension of the law, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. Following Hurricane Katrina’s devastation of the Mississippi Gulf Coast, the coastal counties faced the monumental task of cleaning up in the wake of the storm. Millions of pounds of debris — food waste, industrial and commercial waste, household goods, building and structural debris, vegetative debris, and hazardous substances — covered the counties hardest hit by the storm. On September 18, 2005, in response to this unprecedented event, Governor Haley Barbour issued a Resolution authorizing the Mississippi Department of Environmental Quality (MDEQ) to execute an Emergency Order that addressed various environmental concerns, including: wastewater treatment, air-pollution sources, solid-waste management, hazardous-waste management, asbestos, and underground storage tanks. The solid-waste management section of the order allowed for emergency waste-disposal sites for vegetative, building, and structural debris.[4]
¶ 4. Prior to the governor’s resolution, Fore had entered into a contract with Har *575 rison County for the removal of Hurricane Katrina debris at the price of $10.64 per cubic yard. The contract provided, in pertinent part:
I. PURPOSE:
The purpose of this Contract is to provide debris removal from certain public property and such other areas as may be designated, in writing, by the County as defined herein as a result of Hurricane Katrina[,] which occurred on August 29, 2005. This Contract is also entered into under the provisions of Section 33-15-17 Mississippi Code of 1972, and pursuant to the Governor’s Declaration of Disaster as provided by Section 33-15-31, Mississippi Code of 1972, as well as the President’s Declaration of Disaster.
II. SERVICES OF CONTRACTOR
(B).... Contractor represents that it is familiar with all federal, state, and local ordinances, laws, rules, and regulations with respect to debris pick-up, transportation, and disposal, and that it will fully comply therewith at all times during the performance of work under this Contract.
(H) Contractor shall furnish and pay the cost, including sales taxes and all other applicable taxes and fees, of all the necessary materials and shall furnish and pay for all the superintendents, labor, tolls, equipment, transportation and pay for all disposal site dumping fees....
¶ 5. After he entered into the contract with Harrison County, Fore requested that the county approve two sites for waste disposal: the Delancey site and Lo-Bouy Road site. These requests stated, “W.C. Fore agrees to follow all DEQ rules, regulations^] and law on this property.” Harrison County then forwarded Fore’s requests to the MDEQ and requested approval of the sites. The MDEQ approved both requests. Fore was approved to dispose of building, structural, vegetative, and household debris at the Delancey site and to dispose of vegetative debris at the Lo-Bouy Road site.
¶ 6. After the MDEQ’s approval, Fore began removing debris from the public rights-of-way in Harrison County. Fore also entered into an agreement with another contractor, Phillips and Jordan, Inc. (P & J), allowing P & J to use the Delancey site for disposal of hurricane debris that P & J collected in accordance with a contract it had with the City of Gulfport. Fore charged P & J either $1.00 per cubic yard or $1.50 per cubic yard, depending on the type of debris.
¶ 7. On February 8, 2006, the MDEQ sent a memorandum to the “Owners/Operators of Commercial Sites Used for Disposal of Wastes from Hurricane Katrina.” The memorandum stated that the emergency sites used to dispose of hurricane debris were commercial disposal sites and were subject to the MDEQ reporting requirements for solid-waste disposal. A reporting form was attached to the memorandum. The memorandum provided:
Please note that the owner/operator of the commercial disposal site is also required to file a report with the Mississippi State Tax Commission before July 15, 2006 showing the total amounts of waste disposed at the facility during Calendar Year 2005 and shall at the same time pay a $1.00 per ton fee to the Tax Commission.
Fore completed the attached reporting forms and returned them to the MDEQ. For the Delancey site, Fore reported 291,-012.08 cubic yards of debris. Using the MDEQ’s conversion factor of 0.25 tons per cubic yard, Fore reported that he had disposed of 72,753.02 tons of waste at the *576 Delancey site. On the LoBouy Road site reporting form, Fore reported that 136,-870.50 cubic yards of hurricane debris had been disposed. Again, using the conversion factor of 0.25 tons per cubic yard, Fore reported that 34,217.63 tons of debris had been disposed of at the LoBouy Road site.
¶ 8. On May 19, 2006, the MSTC sent a letter to nonhazardous solid-waste management facilities, requesting that owners and operators of the facilities complete an annual reporting form. The letter stated that the reports should be filed in accordance with Mississippi Code Section 17-17-219, and that a $1.00 per ton fee was imposed on municipal solid waste. The owners and operators of the sites were to file a report with the MSTC even if no fee was due. Fore returned reporting forms for both the Delancey and LoBouy Road sites. On the Delancey form, Fore reported that he had disposed of 298,964 tons[5] of nonhazardous solid waste. The form required the owners and operators to report the total tons of waste that were subject to a fee and the total fee due. Fore entered a zero for both on the Delancey form. On the LoBouy Road form, Fore reported that 34,218 tons of waste had been disposed and again entered zeros in the blanks for the total tons of waste that were subject to a fee and the total fee due.
¶ 9. In response to Fore’s reports, the MSTC assessed a fee of $333,182 for both the Delancey and LoBouy Road sites. Because Fore did not attach payment to the reporting forms, the MSTC assessed interest and a penalty fee of $103,286.42. The total amount assessed was $436,468.42.
¶ 10. Fore appealed the assessment to the MSTC Board of Review, and the Board of Review affirmed the assessment. Fore then appealed to the Full Commission and presented the following arguments:
(1) that the Delancey and LoBouy Sites were not commercial non-hazardous solid waste management facilities primarily because the only legal authority for such emergency facilities is found in Miss. Code Ann. § 33 — 15—ll(b)(17) which directs that the Governor can proclaim a state of emergency and direct officials to take emergency actions such as the creation of emergency disposal sites and because Miss.Code Ann. § 33 — 15—31(b) suspends inconsistent laws, rules and regulations;
(2) that Mr. Fore did not operate the Delancey Site for City of Gulfport debris because the City of Gulfport contracted with Phillips and Jordan, Inc. for debris pick-up[,] transportation and disposal and because Phillips and Jordan, Inc. subleased a portion of the Delancey site from Mr. Fore for those purposes; and
(3) that the conversion factor from cubic yards to tons was excessive because the conversion factor used to convert cubic yards to tons was 0.25 tons per cubic yard rather than 0.083 tons per cubic yard per an MDEQ conversion chart.
Fore also requested that the penalty and interest assessed by the MSTC be abated. The Full Commission found that the De-lancey and LoBouy sites were commercial nonhazardous waste-management facilities and were subject to the $1.00 per ton fee, that Fore was the operator of the entire Delancey site, and that the 0.25 conversion factor was correct. The Full Commission abated the penalty and interest and assessed a total fee of $333,182.
*577 ¶ 11. After paying the assessed fees under protest, Fore appealed the Full Commission’s finding to the Chancery Court of Harrison County, First Judicial District. A trial de novo was held, and the chancellor entered a thirty-nine-page opinion and final judgment affirming the findings of the Full Commission. Fore has now appealed to this Court.
STANDARD OF REVIEW
¶ 12. Generally, review of any administrative-agency decision is limited. Hinds County Sch. Dist. Bd. of Trs. v. R.B., 10 So.3d 387, 394 (Miss.2008). Ordinarily, the trial courts and appellate courts will “reverse the decision of an administrative agency only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency to make; or (4) violated the complaining party’s statutory or constitutional right....” Buffington v. Miss. State Tax Comm’n, 43 So.3d 450, 453-54 (Miss.2010) (footnote omitted) (quoting Miss. Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid, 21 So.3d 600, 606-607 (Miss.2009)). The MSTC asserts the chancery court must apply this general standard of review, because Mississippi Code Section 27-77-7(4) provides that “the chancery court shall give deference to the decision and interpretation of law and regulations by the [MSTC] as it does with the decisions and interpretation of any administrative agency.” Miss.Code Ann. § 27-77-7(4) (Rev. 2006).[6] However, this language governs the trial court’s review of the applicable law and regulation, not evidence. We recently clarified the court’s role in interpreting the law governing agency action:
The ultimate authority and responsibility to interpret the law, including statutes, rests with this Court. But in determining the most reasonable and appropriate interpretation of a statute, the agency’s interpretation is an important factor that usually warrants strong consideration. However, we do not defer to the agency’s interpretation in the sense that we yield judgment or opinion.
Queen City Nursing Ctr., Inc. v. Miss. State Dep’t of Health, 80 So.3d 73, 84 (Miss.2011). In other words, statutory interpretation is a question of law that is reviewed de novo. Akins v. Miss. Dep’t of Revenue, 70 So.3d 204, 208 (Miss.2011) (citing Adams v. Baptist Mem’l Hosp.-DeSoto, Inc., 965 So.2d 652, 655 (Miss.2007)).
¶ 13. As for the chancellor’s review of factual questions, Section 27-77-7(4) specifically requires the chancellor:
... try the case de novo and conduct a full evidentiary judicial hearing on the issues raised. Based on the evidence presented at the hearing, the chancery court shall determine whether the taxpayer has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested. The chancery court shall decide all questions presented, including those as to legality and the amount of tax or refund due, and if it finds that the tax assessment or denial of refund claim in issue is incorrect or invalid, in whole or in part, it shall determine the amount of tax or refund due, including interest and, if applicable, penalty to date, and enter such order or judgment as it deems proper. ...
*578 Miss.Code Ann. § 27-77-7(4) (Rev. 2006) (emphasis added). This section clearly requires the chancellor to be the trier of fact on appeal. We review the chancellor’s factual determinations applying a manifest-error standard. Miss. State Tax Comm’n v. ANR Pipeline Co., 806 So.2d 1081, 1084 (Miss.2001). We will not reverse where the chancellor’s findings are supported by “substantial, credible, and reasonable evidence.” City of Jackson v. Perry, 764 So.2d 373, 376 (Miss.2000).
DISCUSSION
¶ 14. Fore presents three issues for this Court’s consideration: (1) whether the De-lancey and LoBouy Road sites were commercial nonhazardous solid-waste management facilities; (2) whether the MSTC’s treatment of the waste-management facilities was unequal and therefore violated Fore’s constitutional rights; and (3) whether Fore operated the portion of the Delancey site that was used by P & J.
I. Whether the Delancey and Lo-Bouy Road sites were commercial nonhazardous solid-waste management facilities.
¶ 15. Fore contends that the De-lancey and LoBouy Road sites were not commercial nonhazardous solid-waste management facilities and were not subject to the tax for such facilities. Fore made this argument before the MSTC and the chancery court, and both found that the sites were commercial facilities and subject to the $1.00 per ton tax assessed by the MSTC. The following is from the MSTC’s finding:
The Delancey and LoBouy sites were commercial non-hazardous solid waste management facilities subject to the $1.00 per ton fee. Miss.Code Ann. § 17-17-3(d) defines a commercial nonhazardous waste disposal facility as “... any facility engaged in the storage, treatment, processing or disposal of nonhazardous solid waste from more than one (1) generator not owned by the facility owner.” (emphasis added). The De-lancey and LoBouy sites clearly come within the definition. Miss.Code Ann. § 17-17-219 imposes a One Dollar ($1.00) per ton disposal fee on all such facilities. While these sites were created pursuant to the Mississippi Emergency Management Law (Miss.Code Ann. § 33-15-1 et seq.), there is no merit to Mr. Fore’s argument that the Delancey and LoBouy Sites were not commercial sites and that Miss.Code Ann. § 33-15-31(b) suspends the $1.00 per ton fee. As stated hereinabove, the sites clearly fall within the definition of commercial nonhazardous waste disposal facilities. While it is correct that Miss.Code Ann. § 33-15-31(b) suspends inconsistent laws, rules and regulations, it effected no such suspension in this matter because there were no inconsistent laws, rules or regulations in as much as the Mississippi Emergency Management Law is completely silent with regard to fees and exemptions.
¶ 16. The chancery court upheld the MSTC’s ruling, finding that the two sites met the statutory definition of a commercial nonhazardous solid-waste management facility. Further, the chancery court found that the “imposition of the fee under § 17-17-219 is not inconsistent with the Emergency Management Laws of this State.”
¶ 17. In his appellate brief, Fore contends that the two sites were used for emergency purposes only, and were not subject to the $1.00 per ton tax. Fore cites Mississippi Code Section 33-15-1 (Rev. 2010) and claims that there is no specific authority for establishing emergency disposal sites. He further contends that, because the fee was not mentioned in *579 either the governor’s proclamation of a state of emergency or the MDEQ’s Emergency Order, the fee did not apply. Fore also cites Mississippi Code Section 33-15-31(b) (Rev. 2010)[7] for the proposition that all laws relating to the operation of disposal sites were suspended during the time when the MDEQ’s Emergency Order was in effect. Finally, Fore cites Bolivar County v. Wal-Mart Stores, Inc., 797 So.2d 790 (Miss.1999), to support his contention that Mississippi Code Section 33-15 — 31(b) (Rev. 2010) suspends laws that impose waste-disposal fees during emergencies.
¶ 18. Fore’s reliance on the Bolivar County ease is misplaced. Bolivar County involved a dispute between a county and a town as to who was responsible for a charge account. Id. at 790. An ice storm hit Bolivar County in 1994, and the county allowed the town to use its charge account at a local Wal-Mart to purchase supplies after the storm. Id. at 791. Wal-Mart charged both the county and the town for the supplies, and both refused to pay, claiming that the other was responsible for the charges. Id. at 792. Discussing who was responsible for the Wal-Mart charges, the Court considered which statutes govern in emergency situations and how they should be construed. Id. at 793. The Court looked at two conflicting statutes-Mississippi Code Sections 33-15-17 and 31-7-13(k). Id. at 794-95. Mississippi Code Section 33-15-17 (Rev. 2010) allows municipalities to enter into contracts in times of emergency for the purpose of ensuring the public health and safety. Mississippi Code Section 31-7-13(k) (Rev. 2010) addresses emergency purchase powers and allows municipalities to forego normal competitive bidding procedures. In addressing the two statutes, this Court found that Section 33-15-17 “is the controlling statute in times of emergency.” Id. at 795. Because Section 33-15-17 controls during times of emergency, the Court found that it could not be read in conjunction with Section 31 — 7—13(k). Id. at 796.
¶ 19. Unlike the facts in Bolivar County, in today’s case there are no conflicting statutory provisions. Rather, Fore contends that Section 33 — 15—31(b) absolves any obligation to pay a fee for waste disposal. Fore’s reading of the statute is misplaced. Section 33-15-31(b) suspends existing laws and obligations that are inconsistent with the provisions of the Emergency Management Law. It does not, however, suspend all existing laws and obligations.
¶ 20. The chancery court and the MSTC both found that the tax obligation under Section 17-17-219 was not inconsistent with the Emergency Management Law. Nothing in the Emergency Management Law expressly waives taxes or waste-disposal fees. Thus, the inconsistency that Section 33-15-31 (b) waives is not present in today’s case. For these reasons, the chancery court’s finding was supported by substantial evidence and does not contain a misapprehension of the *580 law. Accordingly, this issue is without merit.
II. Whether the MSTC’s treatment of the waste-management facilities was unequal, and therefore, violated Fore’s constitutional rights.
¶ 21. In his next contention of error, Fore claims that the MSTC gave other similarly situated emergency site operators preferential treatment-lowering or waiving fees for some operators, but not others. He contends that the MSTC’s and MDEQ’s treatment of the waste-management facilities was arbitrary and capricious and that the unequal treatment violated his right to equal protection.
¶ 22. Fore cites Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), for the proposition that a “class of one” may bring an equal protection claim. In class-of-one cases, the plaintiff must prove two elements: (1) that he or she was treated differently from others similarly situated; and (2) that there was no rational basis for disparate treatment. Id. at 564, 120 S.Ct. 1073 (citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. County Comm’n of Webster County, W. Va., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). The chancery court found that Fore was not a class of one, rather, Fore was a member of a class of emergency waste-management facility operators.
¶ 23. To this point, the chancery court erred in finding that Fore was not a class of one. Under a class-of-one argument, the plaintiff need not assert membership in a particular class, but rather, his claim rests on the government’s arbitrary classification of him as opposed to others who are similarly situated. Engquist v. Or. Dep’t of Agric., 553 U.S. 591, 602-03, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). This is the argument that Fore makes, claiming that the MDEQ and MSTC arbitrarily have treated him differently than other similarly situated waste-management facility operators. Thus, he is a class of one, and the relevant inquiry for this Court is whether Fore was treated differently from others similarly situated, and if so, was there a rational basis for the treatment.
¶ 24. Fore bears the burden of proving that he was similarly situated with other operators and that he was treated differently from those similarly situated. Olech, 528 U.S. at 564, 120 S.Ct. 1073. The Court of Appeals has held that “ ‘[s]imilarly situated’ individuals must be ‘prima facie identical in all relevant respects.’ ” Suddith v. Univ. of S. Miss., 977 So.2d 1158, 1173 (Miss.Ct.App.2007) (quoting McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir.2004)). The trial court found that Fore did not show that he was similarly situated with the other site operators.
¶ 25. The chancery court first noted that some operators were treated differently because of the amount of profit they made from operating the site — “that the amount of tax assessed might be adjusted ‘if a lesser amount of compensation or no compensation was paid to you for waste received at the facility.’ ” Further, the chancellor found that Fore was not similarly situated with other taxpayers who had filed their own tax returns prior to an assessment by the MSTC. The chancellor noted that the operators who chose to file their own tax returns had the “opportunity to present evidence showing exceptional circumstance and/or providing interpretation of fact or law being followed by MTC,” but Fore did not take advantage of this opportunity. Because of this, the chancellor found that Fore was not simi *581 larly situated with these operators. The chancellor also found that the MSTC’s delay in auditing and assessing the other operators did not indicate preferential treatment over Fore. The chancery court noted that the nature of the agency prevents all operators from being assessed or audited at the exact same time.
¶ 26. In his appellate brief, Fore again claims that he was treated differently from similarly situated operators. Fore first contends that he received the same emergency authorization and followed the same MDEQ reporting procedures as an operator whose fee was waived by the MDEQ. The MSTC and MDEQ respond in their brief that this operator charged much less than Fore-$1.00 per ton, rather than $10.64 per cubic yard. It should be noted that the fee charged by the MSTC also is $1.00 per ton.
¶ 27. Fore also contends that he was treated differently from other operators who either had their fees reduced or waived for certain periods of time. For example, Fore claims that one operator was charged fees only for 2006, and not 2005. He also claims that another operator used an incorrect conversion factor, which resulted in that operator paying less than he would have if the MDEQ’s 0.25 factor had been used. Fore contends that the MSTC has made no attempt to collect the difference in fees from the operator. Fore also contends that another operator did not pay the full amount due, and that the MSTC did not attempt to collect the delinquent payment.
¶ 28. Fore asserts several other examples of alleged unequal treatment in his brief. In response, the MDEQ and MSTC provided various explanations for the alleged different treatment. First, they claim that one of the operators was not disposing of debris, but was staging the debris to be disposed of in another location. They also claim that the MSTC is pursuing collection of fees against operators who have been delinquent in payment or who have paid an incorrect amount. Further, they contend that some delinquent payments were not pursued because the statute of limitations had run on those particular claims.
¶ 29. The record supports the MDEQ’s and MSTC’s contentions. Charmin Tillman, director of the Miscellaneous Tax Bureau at the MSTC, testified that one operator was not charged a fee because his site was used for staging, rather than disposal. She also testified that, although some assessments for other operators were stalled, they now have been assessed, and the MSTC is in the process of collecting the fees or auditing the operators.
¶ 30. The chancery court found that Fore did not prove that he was similarly situated with the other operators. Fore contends in his appellate brief that he is similarly situated because he was operating an emergency waste-disposal site and followed the same emergency procedures as the other operators, but he focuses most of his brief on the allegedly different treatment among the various operators. Fore is not similarly situated with all of the operators noted in his brief. For example, Fore is not similarly situated with the operator who staged debris, rather than disposed of it. He also is not similarly situated with the operators who charged little or no fee for the disposal. However, as to those who are similar to Fore-operators who disposed of waste and charged a regular fee-Fore has failed to show that he was treated differently from those operators. Evidence was presented at trial showing that the MSTC is either in the process of auditing the operators or collecting fees from the operators. Simply because one operator may be further along in the process of being audited or paying *582 taxes does not make the treatment of that operator different from another for equal-protection purposes.
¶31. In sum, Fore has failed to show that he was treated differently from other similarly situated operators. Because Fore has failed to demonstrate different treatment, it is not necessary to discuss whether there was a rational basis for the alleged disparate treatment. Although the chancellor erred in finding that Fore was not a class of one, the chancellor’s finding that Fore was not treated differently from other similarly situated operators contained no error of law and was supported by substantial evidence. This issue is without merit.
III. Whether Fore operated the portion of the Delancey site that was used by Phillips and Jordan.
¶ 32. As an alternative argument, Fore claims that if he is subject to the fees assessed by the MSTC, he should not have to pay the fees attributable to the portion of the Delancey site that was used by P & J. Fore made this argument before the MSTC, and the Full Commission made the following finding:
Mr. Fore was the operator of the Delan-cey site and is liable for disposal fees generated at that site. By letter dated September 16, 2005, the Mississippi Department of Environmental Quality granted authorization to Mr. Fore to operate the Delancey site. The mere fact that Mr. Fore may have entered into an agreement with Phillips and Jordan, Inc. by which Mr. Fore agreed to allow Phillips and Jordan, Inc. to dispose of waste at the facility pursuant to an agreement or agreements Phillips and Jordan, Inc. might have had with third parties does not absolve Mr. Fore of liability for the disposal fees. Mr. Fore was granted authorization to operate the Delancey facility and admitted during the course of the hearing before the Commission on January 21, 2009 that he was compensated by Phillips and Jordan, Inc. for disposal of debris at the Delancey Site.
¶ 33. The chancellor also addressed whether Fore was responsible for all of the Delancey site fees. The chancellor stated in his opinion and final judgment:
Fore admitted that he was not the owner of the Delancey property, but that he had a written agreement with the Delan-ceys allowing him to utilize the property. As discussed above, Fore sought the approval for the use of this property for disposal of emergency debris through Harrison County, who in turn sought approval from DEQ. Harrison County passed a resolution allowing the contractors for the municipalities to use the emergency sites for disposal of the municipalities’ hurricane debris. Fore then entered into an agreement with P & J in which Fore was compensated by P & J for debris disposed at Delancey at a rate of $1.00 per cubic yard ($4.00 per ton) for the disposal of vegetative debris and $1.50 per cubic yard ($6.00 per ton) for disposal of construction and demolition debris.
Fore points out that DEQ documents recognize that P & J was an operator for, at least part of, the Delancey site. However, the record also contains documents in which the DEQ went directly to Fore for reporting and compliance. DEQ also argues that under Fore’s argument, Fore failed to join P & J as a necessary party pursuant to M.R.C.P. 19. Because this Court finds that Fore is responsible for reporting of the entire amount of debris disposed at Delancey, this issue need not be addressed. Pursuant to the SW-2 Regulations, Section II.O:
*583 When a disaster occurs, such as a tornado, hurricane, or flood, and results in urgent need for public solid waste disposal or processing facilities, the Department may approve a site or facility for immediate operation subject to stipulated conditions and for a limited period of time.
DEQ looked to the “owner” of the facility for compliance with its regulations. Fore held himself out to be the owner of the property. SW-2 regulations define “owner” as “the person(s) who owns a facility or part of a facility and is responsible for the overall operation.” SW-2, Section I.C. Thus, Fore was responsible for compliance with the bookkeeping requirements (Section IV.B.11) and the annual report (Section IV.B.15).
¶ 34. Fore contends in his appellate brief that P & J was the operator of a portion of the Delancey site, and, therefore, he is not responsible for the fees assessed to that portion. Fore claims that he “did not operate, manage or receive any compensation for operating or managing that portion of the Delancey site where City of Gulfport debris was placed [by P & J] and would not be responsible for any disposal fees imposed on the same.” (Emphasis in original.) In response, the MDEQ and MSTC contend that Fore was the only MDEQ authorized operator of the Delancey site, and that Fore and P & J had a relationship similar to a contractor and subcontractor. Further, they point out that Fore was compensated by P & J for the use of the Delancey site.
¶ 35. Mississippi Code Section 17-17-205(e) (Rev. 2003) defines “operator” as “any person, corporation, county, municipality or group of counties or municipalities acting jointly operating a sanitary landfill or having any interest in the land whereon a sanitary landfill is or has been located.” The evidence at trial demonstrated that Fore was the operator of the entire Delancey site. Fore charged P & J a fee for disposing of debris on the Delan-cey site and regularly sent P & J invoices for the dumping. Fore also testified that he covered and closed the entire Delancey site after the debris disposal and that he was responsible for making sure the entire site was closed. He also signed a letter stating that he “agree[d] to follow all DEQ rules, regulations^] and law on” the Delan-cey property. Further, the MDEQ communicated directly with Fore when concerns arose about the Delancey site.
¶ 36. The evidence at trial supported the MSTC’s and the chancery court’s finding that Fore was the operator of the entire Delancey site. The MDEQ approved Fore to operate the entire site, and then he entered into a separate contract with P & J to allow them to use a portion of the site. The chancellor’s judgment was supported by substantial evidence and contains no error of law. Accordingly, this issue is without merit.
CONCLUSION
¶ 37. The MSTC’s and chancery court’s findings were supported by substantial evidence, and there was no misapprehension of the law. The evidence shows that the Delancey and LoBouy Road sites were both commercial nonhazardous solid-waste management facilities and were subject to the $1.00 per ton fee. Fore failed to demonstrate that he has been treated differently from other similarly situated facility operators. As an operator of the Delancey site, Fore is responsible for the entire fee assessment for that site. Therefore, we affirm the judgment of the Chancery Court for the First Judicial District of Harrison County.
¶ 38. AFFIRMED.
*584 WALLER, C.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ, CONCUR. DICKINSON, P.J., NOT PARTICIPATING.

. The contract was between W.C. Fore Trucking, Inc. and Harrison County, Mississippi. However, the parties and the trial court have treated the corporation as an individual. For consistency, any references to the corporation or the individual in this opinion will be as "Fore.”

. The Mississippi State Tax Commission is now known as the Mississippi Department of Revenue. For consistency with the record, "Mississippi State Tax Commission" or "MSTC” will be used to refer to the Mississippi Department of Revenue.

. As part of the MSTC reorganization in 2010, the Full Commission became a separate agency known as the Mississippi Board of Tax Appeals. However, for consistency with the record, "Full Commission” will be used to refer to what is currently known as the Mississippi Board of Tax Appeals.

.The provision stated: "Requirements are hereby waived for permitted municipal solid waste landfills to obtain prior MDEQ approval of linear construction quality assurance ("QA”) plans for new disposal cells for a period of 6 months. During this 6 month period, the QA plans must be submitted to MDEQ within 14 days of construction; however, MDEQ approval is not necessary prior to initiating use of the cell."

. Although Fore entered 298,964 tons on the form, it appears that this actually may be the amount of waste in cubic yards, rather than tons, based on the calculations for converting cubic yards to tons set out above.

. Section 27-77-7 was revised effective July 1, 2010, after the assessment involved here was issued. Subsection (4) is now subsection (5), and several minor, nonsubstantive changes were made to the statute. See Miss. Code Ann. § 27-77-7(5) (Rev. 2010).

. Mississippi Code Section 33 — 15—31(b) provides:
All orders, rules, and regulations promulgated by the Governor, the Mississippi Management Agency or by any political subdivision or other agency authorized by this article to make orders, rules and regulations, shall have the full force and effect of law, when, in the event of issuance by the Governor, or any state agency, a copy thereof is filed in the office of the Secretary of State, or, if promulgated by a political subdivision or agency promulgating the same. All existing laws, ordinances, rules and regulations inconsistent with the provisions of this article, shall be suspended during the period of time and to the extent that such conflict, disaster or emergency exists.
Miss.Code Ann. § 33-15-31(b) (Rev. 2010) (emphasis added).