# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-01657-SCT

*WATKINS DEVELOPMENT, LLC AND DAVID*
*WATKINS, SR.*

*v.*

*C. DELBERT HOSEMANN, JR., IN HIS*
*OFFICIAL CAPACITY AS MISSISSIPPI*
*SECRETARY OF STATE*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2014 |
| TRIAL JUDGE: | HON. HOLLIS McGEHEE |
| TRIAL COURT ATTORNEYS: | J. BRAD PIGOTT |
| | DOUGLAS T. MIRACLE |
| | CHERYN NETZ BAKER |
| | JESSICA LEIGH LONG |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | J. BRAD PIGOTT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DOUGLAS T. MIRACLE |
| | JAMES W. SMITH, JR. |
| | JAMES ASHLEY OGDEN |
| | TYLER ARTHUR ROYALS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART; THE JUDGMENT OF THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED - 03/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Mississippi Secretary of State found that David Watkins and Watkins Development, LLC, committed four securities-fraud violations in connection with revenue bonds sold to finance a renovation project at the Metrocenter mall in Jackson. Watkins appealed and the chancery court vacated one count but affirmed the other three. The Court of Appeals then affirmed the Secretary on all four counts.

¶2. We granted certiorari and now reverse the Court of Appeals in part because the Secretary failed to cross-appeal the chancellor's decision to vacate Count I. That said, we affirm, as did the chancellor and Court of Appeals, the Secretary's findings on the other three counts.

**FACTS AND PROCEDURAL HISTORY**

¶3. David Watkins agreed to renovate the Belk building at the Metrocenter Mall into office space for the City of Jackson. In August 2010, Watkins formed Retro Metro, LLC, to run the Metrocenter project. On February 21, 2011, Retro Metro entered into an agreement with David Watkins Development, LLC—Watkins's development company—which provided that Retro Metro would pay Watkins Development a flat fee of $500,000 and a mobilization fee of 25% of the Metrocenter project cost.

¶4. To finance the project, the Mississippi Business Finance Corporation (MBFC) had bond counsel prepare a private placement memorandum ("PPM"). On April 5, 2011, MBFC issued taxable revenue bonds pursuant to the PPM to finance the project. Duncan Williams, an investment banking firm, purchased all the bonds. The MBFC placed $4,875,000 in proceeds in a construction account with Bankplus under a trust indenture. Retro Metro

2

entered a loan agreement with the MBFC which loaned Retro Metro the proceeds to finance the Metrocenter project.

¶5.     The PPM, which Watkins helped to prepare, represented that the bond proceeds would be used to finance the Metrocenter project.  Similar language appeared in the loan agreement and in the bond purchase contract.  The documents also represented that Watkins had disclosed all related financial agreements.  But the development agreement between Retro Metro and Watkins Development was not disclosed, and the PPM did not disclose that any portion of the bond proceeds would be diverted to another project.

¶6.     Work proceeded on the project and, by June 2, 2011, Retro Metro had made three requisitions from the construction account. Each requisition stated the funds were withdrawn to pay construction costs.  The requisitions never referenced any debt owed to Watkins Development.

¶7.     On June 8, 2011, six days after receiving $800,000 from the construction account, Watkins wired $587,084.34 from Retro Metro's checking account to a real estate attorney in Meridian.  This was related to a contract between the City of Meridian and Meridian Law Enforcement Center, LLC, which Watkins had formed in April 2011 to renovate an existing property into a police station.  The funds were used to purchase the real estate for the Meridian police station.

¶8.     Later, in April 2012 after Watkins had defaulted on a payment under the loan agreement, the Secretary of State's office initiated administrative procedures against Watkins

3

which culminated in a finding that Watkins had committed four violations of Mississippi Code Section 75-71-501.

¶9. First, the Secretary found that Watkins had violated Section 75-71-501(2) when he had failed to disclose the development agreement between Retro Metro and Watkins Development in the PPM or loan agreement ("Count I"). Second, the Secretary found that Watkins had violated Section 75-71-501(1) when he had failed to disclose in the PPM, loan documents, or requisition requests, that bond proceeds would be used for the Meridian project ("Count II"). Third, the Secretary found that the same conduct giving rise to Count II also violated Section 75-71-501(2) ("Count III"). Finally, the Secretary found that Watkins had violated Section 75-71-501(3) when he had used the bond proceeds to purchase the Meridian property ("Count IV"). The Secretary imposed a $25,000 fine for each of Counts I, III, and IV, but no fine for Count II. The Secretary also ordered Watkins to repay the $587,084.34 plus interest, and $18,047.39 toward the costs of the administrative proceeding.

¶10. Watkins appealed to the Chancery Court for the First Judicial District of Hinds County, which vacated Count I but affirmed Counts II, III, and IV. Watkins then appealed the chancellor's decision, and we assigned the case to the Court of Appeals. The Secretary did not cross-appeal the chancellor's ruling on Count I. The Court of Appeals affirmed the Secretary and the chancellor on Counts II, III, and IV.[1] The Court of Appeals reversed the chancellor's decision on Count I and affirmed the Secretary on that Count, even though that

---

[1] ***Watkins Dev., LLC v. Hosemann***, 2016 WL 3512479, *1 (Miss. Ct. App. June 28, 2016).

4

issue was not appealed.[2] Watkins then filed a petition for writ of certiorari, which we granted.

## ANALYSIS

I. **The Court of Appeals erred by addressing a portion of the chancellor's order that the Secretary failed to cross-appeal.**

¶11. The chancellor reversed the Secretary's finding under Count I, that Watkins had violated Section 75-71-501(2) when he had failed to disclose the development agreement between Retro Metro and Watkins Development in the PPM and loan agreement, and the Secretary did not raise that issue on appeal. Watkins argues that the Court of Appeals erred by addressing that issue, and by reversing the chancellor's decision. We agree.

¶12. Watkins's notice of appeal specifically stated that he appealed the chancellor's decision "to the extent that such Opinion and Order affirms and does not reverse the Final Order entered against such Petitioners by the Respondent Secretary of State." The Secretary filed no cross-appeal. Then, in his brief before the Court of Appeals, the Secretary stated "[t]he Secretary did not appeal the Chancellor's findings with respect to the Development Agreement and thus, the issue is moot for purposes of this appeal." Even in his response to the petition for certiorari, the Secretary "takes no position" as to whether the Court of Appeals properly raised this issue sua sponte.

¶13. In *Dunn v. Dunn*, this Court held that "an appellee should not be required to file a cross-appeal unless he or she is aggrieved by the trial court's judgment."[3] There, we quoted

---

[2] *Id.*

[3] *Dunn v. Dunn*, 853 So. 2d 1150, 1152 (Miss. 2003).

a Court of Appeals decision stating "that '[i]n order for the appellee to gain reversal of any part of the decision of a trial court about which the appellant brings no complaint, the appellee is required to file a cross-appeal.'"[4] We also noted a Michigan Court of Appeals decision which "held, '[g]enerally, the failure to file a cross appeal precludes the appellee from raising an issue not raised by appellant.'"[5]

¶14. Here, under **Dunn**, the Court of Appeals erred by addressing the portion of the chancellor's ruling that was not appealed. So we reverse the Court of Appeals's ruling as to Count I, and reinstate the chancellor's decision reversing the Secretary's finding on that count.

## II. The Secretary's other findings were supported by substantial evidence.

¶15. When we review a "'decision by a chancery or circuit court concerning an agency action, [we apply] the same standard of review that the lower courts are bound to follow.'"[6] We may reverse the Secretary's decision "only if it '(1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative

---

[4] *Id.* (quoting **Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss.**, 790 So. 2d 862, 878 (Miss. Ct. App. 2001)).

[5] **Dunn**, 853 So. 2d at 1152 (quoting **Hajj v. Roat**, 2002 WL 571785, *1 (Mich. Ct. App. 2002)).

[6] **Harrington v. Office of Miss. Sec'y of State**, 129 So. 3d 153, 158 (Miss. 2013) (quoting **Miss. Sierra Club, Inc. v. Miss. Dep't of Envtl. Quality**, 819 So. 2d 515, 519 (Miss. 2002)).

6

agency to make; or (4) violated the complaining party's statutory or constitutional right.'"[7]

Further, the Secretary's factual findings, "if supported by competent material and substantial evidence, are conclusive."[8]  That said, as always, we review questions of statutory interpretation de novo.[9]

¶16.  Mississippi Code Section 75-71-501 states:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>
> (1)  To employ a device, scheme, or artifice to defraud;
>
> (2)  To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
>
> (3)  To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.[10]

Section 75-51-501's three subsections set forth distinct acts that constitute securities fraud. All three, however, are subject to the overarching requirement that they occur "in connection with the offer, sale, or purchase of a security."  This Court has not had occasion to expound on the "in connection with" requirement.  But, in *Harrington v. Office of the Mississippi*

---

[7] *Harrington*, 129 So. 3d at 158 (quoting *W.C. Fore v. Miss. Dep't of Revenue*, 90 So. 3d 572, 577 (Miss. 2012)).

[8] Miss. Code Ann. § 75-71-609 (Rev. 2016).

[9] *Harrington*, 129 So. 3d at 158 (quoting *W.C. Fore*, 90 So. 3d at 577).

[10] Miss. Code Ann. § 75-71-501 (Rev. 2016).

***Secretary of State***, we recognized that we will look to federal cases interpreting similarly worded federal securities statutes for guidance.[11]

¶17. The United States Supreme Court's decision in ***Securities and Exchange Commission v. Zanford*** provides a thorough discussion of the "in connection with" requirement.[12] There, the SEC alleged "that a stockbroker violated both § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, as amended, 15 U.S.C. § 78j(b), and the SEC's Rule 10b–5, by selling his customer's securities and using the proceeds for his own benefit without the customer's knowledge or consent."[13] In the appeal from a federal district court's grant of summary judgment, the United States Supreme Court considered "whether the alleged fraudulent conduct was 'in connection with the purchase or sale of any security' within the meaning of the statute and the Rule."[14]

¶18. There, Charles Zanford, a securities broker, persuaded William Wood to open an investment account for himself and his daughter, and to grant Zanford discretion to manage

---

[11] ***Harrington***, 129 So. 3d at 159 (citing ***Lone Star Indus., Inc. v. McGraw***, 90 So. 3d 564, 571 (Miss. 2012); ***Longanecker v. Diamondhead Country Club***, 760 So. 2d 764, 769–70 (Miss. 2000); ***Hopewell Enter., Inc. v. Trustmark Nat'l Bank***, 680 So. 2d 812, 817–18 (Miss. 1996); ***Miss. Ethics Comm'n v. Comm'n on Prof'l Responsibility of the Miss. Bar***, 672 So. 2d 1222, 1225 (Miss. 1996); ***Miller v. Coast Elec. Power Ass'n***, 797 So. 2d 314, 317 (Miss. Ct. App. 2001).

[12] ***Sec. & Exch. Comm'n v. Zanford***, 535 U.S. 813, 815, 122 S. Ct. 1899, 153 L. Ed. 2d 1 (2002).

[13] ***Id.***

[14] ***Id.***

the account and conduct securities transactions without prior approval.[15] On twenty-five separate occasions, Zanford diverted funds from the account for his own use.[16]

¶19.   The federal statute in question made "it 'unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe.'"[17] On appeal, the Supreme Court's analysis focused on whether Zanford's conduct had "the requisite 'connection with' the purchase or sale of a security."[18]

¶20.   The SEC argued that Zanford "engaged in a fraudulent scheme in which he made sales of his customer's securities for his own benefit."[19]   But, Zanford argued, "the sales themselves were perfectly lawful and . . . the subsequent misappropriation of the proceeds, though fraudulent, is not properly viewed as having the requisite connection with the sales."[20]

¶21.   The Supreme Court agreed with the SEC.  In doing so, the Court explained "each sale was made to further respondent's fraudulent scheme; each was deceptive because it was neither authorized by, nor disclosed to, the Woods."[21] The crux of the issue, as the Supreme

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at 819 (quoting  15 U.S.C. § 78j).

[18] *Zanford*, 535 U.S. at 816.

[19] *Id.* at 820.

[20] *Id.*

[21] *Id.* at 820–21.

Court saw it, was that "the scheme to defraud and the sale of securities coincide."[22] And the Court noted, "[t]his is not a case in which, after a lawful transaction had been consummated, a broker decided to steal the proceeds and did so. . . . Rather, respondent's fraud coincided with the sales themselves."[23] The Court noted, however, that "[t]he fact that respondent misappropriated the proceeds of the sales provides persuasive evidence that he had violated § 10(b) when he made the sales."[24]

¶22. We find this analysis instructive for our similarly worded statute. To find any violation of Section 75-51-501, the factfinder must first determine that the alleged fraud occurred "in connection with the offer, sale, or purchase of a security." An alleged fraud occurs "in connection with the offer, sale, or purchase of a security" if the fraud and the offer, sale, or purchase coincide. A lawful securities transaction followed by the misappropriation of the funds accrued therefrom is not enough because this statute addresses only frauds related to the offer, sale, or purchase itself. That said, the later misappropriation of funds may serve as circumstantial—though not dispositive—evidence that the misappropriation occurred as part of a larger fraudulent scheme relating to the offer, sale, or purchase.

¶23. Watkins argues his acts were not "in connection with the offer, sale, or purchase of" the bonds at issue in this case. Counts II and III concern the Secretary's finding that Watkins

---

[22] *Id.* at 822.

[23] *Id.* at 820.

[24] *Id.* at 822.

represented that all the bond proceeds would be used to finance the Metrocenter project and/or failed to disclose that some of the bond proceeds would be used on the Meridian project in the PPM, loan agreement, and requisitions. If these acts constitute fraud under Section 75-51-501—which we discuss below—substantial evidence supports the Secretary's finding that those acts occurred in connection with the bond sale, because Watkins was instrumental in preparing the PPM to obtain the bond sale, he was a party—as manager of Retro Metro—to the bond-purchase contract, and he was a party to the loan agreement to access the proceeds from that sale.

¶24. Count IV concerns the Secretary's finding that Watkins actually misappropriated the bond proceeds by using them to purchase property for the Meridian project. If this count stood alone, Watkins would be correct to argue that it is not "in connection with" the bond sale. As the United States Supreme Court recognized in *Zanford*, misappropriating funds obtained through a *lawful* securities sale is not a fraud in connection with the sale.

¶25. But here, according to the Secretary's findings, the alleged misappropriation does not stand alone. As noted above, a later misappropriation may evince a larger fraudulent scheme relating to the sale itself. We find substantial evidence supporting the Secretary's finding that Watkins's alleged misappropriation was inextricably tied to his alleged misrepresentations in the PPM, bond-purchase contract, and loan agreement. This satisfies the "in connection with" requirement for the misappropriation count as well, because the alleged misappropriation will constitute part of a larger fraudulent scheme that connects to the sale.

11

¶26.   In Count II, the Secretary found that Watkins "employ[ed] a device, scheme, or artifice to defraud" by representing that the bond proceeds would be used for the Metrocenter project, and by failing to disclose that some of the proceeds would be used for the Meridian project.   In ***Harrington***, we quoted with approval the United States Supreme Court's conclusion that the word "employ" in subsection (1) requires proof that one act with the specific intent to defraud.[25]   A device is "[a] scheme to trick or deceive; a stratagem or artifice."[26]   A scheme is "[a]n artful plot or plan, usu. to deceive others."[27]   And an artifice is "[a] clever plan or idea, esp. one intended to deceive."[28]

¶27.   In Count III, the Secretary found that Watkins "ma[d]e an untrue statement of a material fact" by representing that the bond proceeds would used for the Metrocenter project, and he omitted a material fact by failing to disclose that some of the proceeds would be used for the Meridian project.   In ***Harrington***, we found that "Sections 17(a)(2) and (a)(3) of the federal Securities Act are identical to Mississippi Code Sections 75–71–501(2) and (3)" and "[t]hose subsections are 'devoid of any suggestion' of a scienter requirement."[29]   We also recognized that a misrepresentation or omission is material if "under all the circumstances, the omitted fact or the prediction without a reasonable basis 'is one [that] a reasonable

---

[25] ***Harrington***, 129 So. 3d at 162–64 (quoting ***Aaron v. Sec. & Exch. Comm'n*** , 446 U.S. 680, 696–97, 100 S. Ct. 1945, 64 L. Ed. 2d 611 (1980) (quoting 15 U.S.C. § 77q(a)(1))).

[26] *Device*, Black's Law Dictionary 404 (abr. 9th ed.).

[27] *Scheme*, Black's Law Dictionary 1148 (abr. 9th ed.).

[28] *Artifice*, Black's Law Dictionary 100 (abr. 9th ed.).

[29] ***Harrington***, 129 So. 3d at 162–64 (quoting ***Aaron***, 446 U.S. at 696–97).

investor would consider significant in [making] the decision to invest, such that it alters the total mix of information available about the proposed investment."[30]

¶28. In Count IV, the Secretary found that Watkins "engage[d] in an act, practice, or course of business that operate[d] . . . as a fraud or deceit upon another person" by using the bond proceeds for the Meridian project. As with subsection (2), subsection (3) contains no scienter requirement. The question is simply whether the actor's conduct operated as a fraud or deceit.

¶29. We find that the Secretary's findings were supported by substantial evidence. "'Substantial evidence is "something less than a preponderance of the evidence but more than a scintilla or glimmer. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness.""[31]

¶30. A variety of circumstantial evidence supports the Secretary's conclusions. Watkins used proceeds from the bond sale, held in trust by Bankplus, to purchase property for the unrelated Meridian project. When Watkins submitted a requisition form to Bankplus to withdraw the funds he ultimately used in Meridian, he indicated that those funds would be used for demolition and construction on the Metrocenter project.

¶31. Watkins argues these funds cannot be considered misappropriated as he was owed that sum and more under the development agreement between Retro Metro and Watkins

---

[30] *Harrington*, 129 So. 3d at 165 (quoting *Rubinstein v. Collins*, 20 F.3d 160, 166–68 (5th Cir. 1994)).

[31] *Harrington*, 129 So. 3d at 158 (quoting *Sierra Club v. Miss. Envtl. Quality Permit Bd.*, 943 So. 2d 673, 678 (Miss. 2006) (quoting *Miss. Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 280–81 (Miss. 1995))).

Development. While the principle underlying this defense is sound—one cannot misappropriate funds paid to him for a debt owed to him—this defense ignores that Watkins never provided any indication to the trustee that he was withdrawing funds for that purpose. The Secretary then, given our deferential standard of review, was supported by substantial evidence in finding that the money withdrawn and used in Meridian was not withdrawn as payment for the sum owed to Watkins, but instead as part of fraudulent scheme that stemmed from Watkins's misrepresentations in the PPM, bond-purchase contract, and loan agreement, to his representations in the requisition forms, and finally to his misuse of the funds withdrawn.

¶32. Watkins also challenges whether his statements that the funds would be used for the Metrocenter project were material as required to support Count III under subsection (2). He argues that no evidence supports a finding that Duncan Williams—the investment banking firm that purchased the bonds—would have made a different decision if it knew some funds would be used on the Meridian project. But, as explained above, materiality under subsection (2) is an objective reasonable-investor standard, not a subjective standard about the actual purchaser's intentions. Here, the Secretary did not err by finding the statements material, as a reasonable investor purchasing bonds reasonably may be expected to make the decision to purchase, at least in part, on the purpose for the bond issuance.

¶33. In sum, given the deferential nature of our review, we are compelled to find that Counts II, III, and IV are supported by substantial evidence.

**CONCLUSION**

14

¶34. We affirm the Secretary's findings as to Counts II, III, and IV and affirm both the chancellor's and Court of Appeals' decisions to affirm those counts. We reverse the Court of Appeals' decision as to Count I, and affirm the chancellor's decision to vacate the Secretary's finding on that count, because the Secretary failed to cross-appeal the chancellor's decision.

¶35. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART; THE JUDGMENT OF THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED.**

**RANDOLPH, P.J., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. WALLER, C.J., AND CHAMBERLIN, J., NOT PARTICIPATING.**