# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CC-00784-SCT

*CINDY W. KING*

*v.*

*MISSISSIPPI MILITARY DEPARTMENT*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/16/2017 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| TRIAL COURT ATTORNEYS: | PAUL MANION ANDERSON |
| | WILLIAM H. JONES |
| | EMERSON BARNEY ROBINSON, III |
| | LELAND S. SMITH, III |
| | MICHAEL MARK MAJORS |
| | SAMUEL STEVEN McHARD |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PAUL MANION ANDERSON |
| | SAMUEL STEVEN McHARD |
| | WILLIAM H. JONES |
| ATTORNEYS FOR APPELLEE: | EMERSON BARNEY ROBINSON, III |
| | LELAND S. SMITH, III |
| | MICHAEL MARK MAJORS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/07/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. On February 11, 2016, the Adjutant General of the Mississippi Military Department (Department) terminated Cindy King's employment with the Department after conducting an investigation into some of King's activities. Aggrieved, King appealed her termination

to the Mississippi Employee Appeals Board (Board); however, the Department challenged the Board's jurisdiction to hear King's appeal. The chief hearing officer assigned to King's appeal agreed with the Department and dismissed King's appeal. King then appealed for full Board review, and the Board affirmed the chief hearing officer's determination. Next, King appealed to the Forrest County Circuit Court. The circuit court heard arguments and issued an opinion and judgment affirming the Board. Finally, King filed the present appeal. We hold that, while King may be considered a state service employee as defined by the Legislature, the Adjutant General, by virtue of three statutory provisions, is not subject to review by the Board.

## FACTS AND PROCEDURAL HISTORY

¶2. King began working for the Department approximately twenty years ago, and her role was that of a supervisor in the Environmental Office at Camp Shelby. However, in late 2015, Colonel Charles Scott was appointed as an investigating officer to determine whether King "utilized information garnered through her position as the Camp Shelby Environmental Officer to front run the Army Compatible Use Buffer Program for personal gain" by purchasing a specific piece of property located near Camp Shelby. King denied the claim against her, but after concluding the investigation, the Adjutant General terminated King's employment with the Department. The February 2016 letter explained that the investigation "determined that [King] willfully and knowingly violated [Mississippi Code Section] 25-4-105 . . . . This investigation revealed that you used your position for personal gain." The letter concluded that King's "employment with the Mississippi Military Department

Environmental Office is terminated for cause, effective immediately pursuant to [Mississippi Code section] 33-3-11(a) . . . ."

¶3. Upon receiving the letter, King appealed her termination from the Department to the Board, and Chief Hearing Officer Michael Watts heard King's and the Department's arguments. The Department's response to King's appeal was to argue that the Board does not have jurisdiction to hear the appeal because King was not a state-service employee and was an at-will employee of the Adjutant General subject to removal at his discretion. Watts concluded that Mississippi Code Section 33-3-11 states that the Adjutant General shall appoint the employees of his department and "remove any of them at his discretion." Watts explained that the determination that King was subject to removal at the Adjutant General's discretion was supported by a 1994 opinion from the Attorney General that said Department employees were nonstate-service employees and held no property rights in their employment. Finally, Watts stated that, since the Legislature used the term "employee" in Section 33-3-11, but not in other statutes, for example Mississippi Code Section 25-9-107(c)(viii), where "officers" or "members" are used, then "the legislature intended to use the term 'employee' in [Section] 33-3-11 to allow the . . . Adjutant General to terminate an employee at his sole discretion. By doing so, [Department] employees are non-state service employees and this tribunal [(the Board)] lacks jurisdiction to consider Ms. King's appeal."

¶4. King appealed to have the full Board review Watts's order. The Board affirmed Watts's findings and conclusion. The Board noted that Section 33-3-11(a) is not ambiguous and "specifically authorizes the removal of employees employed by the Adjutant General,

3

at his discretion." (Emphasis in original.)

¶5.    Next, King filed a notice of appeal and petition for judicial review in the Forrest County Circuit Court.  After conducting a hearing, the circuit court issued its opinion affirming the Board's decision.  In its opinion, the circuit court explained Section 33-3-11, and other statutes located in Title 33 "unambiguously provide[ that] employees of the . . . Department are at-will employees and have no property interest regarding their employment." The circuit court further explained that it was not persuaded by King's argument that Mississippi Code Section 25-9-129, the Board's jurisdictional statute, applies in the instant case, and "to the extent that [Section] 25-9-129, and other applicable provisions of Title 25, create an ambiguity with [Section] 33-3-11, section 33-3-11 is more specific in that it defines the employment of the . . . [D]epartment employees, and therefore controls."  Additionally, the circuit court did not find the employee handbook provided by King to be persuasive either, because the handbook covered appellate procedures within the Department, not with the Board.

¶6.    Aggrieved by the decisions, King filed the present appeal, and her sole issue is as follows:

> Whether the lower court erred by finding that [King] was not a state service employee, despite extensive evidence indicating that [King] was a state service employee, and affirming the Mississippi Employee Appeals Board's decision to dismiss her appeal from an adverse employment action due to lack of jurisdiction.

## STANDARD OF REVIEW

¶7.    On appeal, the Court reviews the decision of an administrative agency to determine

4

whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision. *Watkins Dev., LLC v. Hosemann*, 214 So. 3d 1050, 1053 (¶ 15) (Miss. 2017).

¶8. We pause here, however, to consider closely our standard for reviewing an agency interpretation of statutes. We have stated that the Court's review of an "agency's interpretation of a rule or statute governing the agency's operation is a matter of law that is reviewed *de novo*, but with great deference to the agency's interpretation." *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 606 (¶ 15) (Miss. 2009). The Court has explained that [t]his "duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate." *Id.* A caveat being that the agency's interpretation will not be upheld "if it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* (citing *Buelow v. Glidewell*, 757 So. 2d 216, 219 (Miss. 2000)).

¶9. However, our pronouncements on the deference due the agency have not been consistent and, especially in recent years, we have backed away from showing "great deference" to agency interpretations of statutes. Because only statutes are at issue in the case *sub judice*, we today address the standard of review only as it applies to agency interpretations of statutes. In *Mississippi Department of Corrections v. Cook*, 210 So. 3d 965 (Miss. 2017), for example, we wrote that no deference will be accorded an agency

interpretation that contradicts "the unambiguous terms or best reading of a statute." *Id.* at 967 (¶ 6) (quoting *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 606 (¶ 15) (Miss. 2009)). Elsewhere we wrote that we do not "'yield judgment or opinion' to an agency's statutory interpretation," because "the ultimate authority and responsibility to interpret the law, including statutes, rests with this Court." *Miss. State and School Emp. Life and Health Plan v. KCC, Inc.*, 108 So. 3d 932, 939 (¶ 20) (Miss. 2013). In addition to the contradiction inherent in *de novo* but deferential review, writing on the one hand that we give great deference to agency interpretations of statutes and, then, with the next strike of the computer keyboard, writing that no deference will be given if the agency's interpretation contradicts the best reading of the statute, creates a confusing and vague standard. The same can be said of claiming to give deference while simultaneously claiming that the Court bears the ultimate responsibility to interpret statutes.

¶10. Deferential review of executive-branch statutory interpretations gives rise to another problem under Mississippi's strict constitutional separation of powers. Article 1, Section 1 of the Mississippi Constitution of 1890 divides the power of state government into three branches and assigns legislative powers to the legislative branch, judicial powers to the judicial branch, and executive power to the executive branch. While writing and passing statutes is the function of the Legislature, *see* Article 4, Section 59 (1890); *see also* **Palermo v. LifeLink Found., Inc.**, 152 So. 3d 1099, 1105 (¶ 13) (Miss. 2014), interpreting statutes once enacted is the role of the judicial branch. *KCC, Inc.*, 108 So. 3d at 939 (¶ 20).

¶11. If Article 1, Section 1, were not enough to establish the strict separation of powers

6

under Mississippi's Constitution, then Article 1, Section 2, leaves no doubt.  It provides as follows:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.  The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Miss. Const. art. 1, § 2.  Executive-branch agencies must follow statutes and, absent a declaration from the judicial branch regarding an interpretation of a statute, must decide what statutes mean.  However, when the interpretation of a statute comes before the courts, and when deference is given to an agency interpretation, we share the exercise of the power of statutory interpretation with another branch in violation of Article 1, Section 2.

¶12.   Pursuant to the foregoing reasoning, we announce today that we abandon the old standard of review giving deference to agency interpretations of statutes.   Our pronouncements describing the level of deference were vague and contradictory, such that the deference could be anywhere on a spectrum from "great" to illusory.  Moreover, in deciding no longer to give deference to agency interpretations, we step fully into the role the Constitution of 1890 provides for the courts and the courts alone, to interpret statutes.  Although not writing of Mississippi's constitutional separation of powers, we find persuasive the reasoning of then-Judge Gorsuch who wrote, in a separate opinion concurring with his own majority in *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142 (10th Cir. 2016), that, absent judicial deference to administrative agencies' interpretation of statutes, "[C]ourts would then fulfill their duty to exercise their independent judgment about what the law *is*." *Id.* at 1158

(Gorsuch, J., concurring).

## ANALYSIS

¶13.    Pursuant to Mississippi Code Section 25-9-101, the Legislature created "a system of personnel administration . . . governing the establishment of employment positions, classification of positions . . . , [and] movement and separation of state employees[.]" Additionally, the Legislature established the State Personnel Board, which in turn, appoints an employee appeals board to "hold[] hearings, compil[e] evidence, and render[] decisions on appeals of state agency action adversely affecting the employment status or compensation of any employee in the state service." *See* Miss. Code Ann. §§ 25-9-109; 25-9-129 (Rev. 2010). The Legislature also has specified which employees are considered in the "state service." Mississippi Code Section 25-9-107(b) defines "state service" as "all employees of state departments, agencies and institutions as defined herein, except those officers and employees excluded by this chapter." Miss. Code Ann. § 25-9-107(b) (Rev. 2010). Interestingly, the Legislature also has provided a list of officers and employees who are excluded from the "state service" label. For example, members of the Legislature and their staff and employees are excluded, as are justices and judges of the judicial branch. Miss. Code Ann. § 25-9-107(c)(i), (iii) (Rev. 2010).[1] Employees of the Department are not included in the list of employees excluded from "state service." The above statutes serve as the bases for King's argument, which, in short, is that, because the Department is not excluded by Section 25-9-107(c), she was a "state service" employee, entitling her to have

---

[1]Mississippi Code Sections 25-9-121 ("state service") and 25-9-123 ("nonstate service") further codify the definitions provided in Sections 25-9-107(c)(i), (iii).

8

the Board hear her appeal.

¶14. The Department also has a strong statutory basis for its position. The Department hangs its hat on the following statute: "The Adjutant General shall: (a) Appoint all of the employees of his department and he may remove any of them at his discretion[.]" Miss. Code Ann. § 33-3-11(a) (Rev. 2010). Further, the Department claims that the Adjutant General is subordinate only to the Governor, so the Board could not and should not intervene by reviewing his decision to terminate an employee. *See* Miss. Code Ann. § 33-3-3 (Rev. 2010) ("There shall be in the executive branch of the state government a military department. *The Adjutant General shall be the executive head of the department and, as such, subordinate only to the Governor in matters pertaining thereto.* There shall be in such department . . . such other officers, enlisted men and civilian employees as the Adjutant General shall, from time to time, determine.") (emphasis added). Lastly, the Department points to Mississippi Code Section 33-3-7, which provides that "[t]he Adjutant General shall be chief of staff to the Governor, *subordinate only to the Governor in matters affecting the military department and militia of this state.*" Miss. Code Ann. § 33-3-7 (Rev. 2010) (emphasis added). Thus, the Department claims that the Board cannot hear an appeal from an employee terminated at the discretion of the Adjutant General.

¶15. King claims that the statutes are in conflict with one another, and as the Court has explained, "[w]henever potentially conflicting statutes are at issue, . . . in order to ascertain legislative intent, we employ rules of statutory construction and look to stare decisis for guidance." **Lenoir v. Madison Cty.**, 641 So. 2d 1124, 1128 (Miss. 1994). We agree that the

statutes are, indeed, conflicting. We also agree that, pursuant to Section 25-9-107, King is a state-service employee whose appeal otherwise would be heard by the Board. However – and here is the real conflict with the above-described statutes that set the powers of the Adjutant General – the Legislature states that "[t]he employee appeals board *may modify the action of the department.* . . . Such appointing authority shall promptly comply with the order issued as a result of the appeal to the employee appeals board." Miss. Code Ann. § 25-9-131(1) (Rev. 2010). The Legislature, in two separate statutes as quoted above, states that the Adjutant General is subordinate only to the Governor, coupled with Section 33-3-11, which explicitly gives the Adjutant General discretion in the hiring and terminating of the Department's employees. Essentially, the Legislature has made the Adjutant General's employment decisions unchangeable by the Board.

¶16. Because the statutes are conflicting, we must engage in statutory interpretation to discern the legislative intent. The Court recognizes a "longstanding rule of statutory construction that the terms of a specific statute control the terms of a general statute." *Lenoir*, 641 So. 2d at 1128-9. King's argument is that Sections 25-9-107 and 25-9-129 are more specific than Section 33-3-11, particularly because Section 25-9-129 is a remedial statute that must be interpreted liberally. King explains that the statutes define "state service" but also provide a list of the employees who are "nonstate service," of which employees of the Department are not listed as "nonstate service." On the other hand, the Department argues that Section 33-3-11 is more specific because it applies directly to the Adjutant General's control of employees of the Department. We agree with the Department and hold

10

that Section 33-3-11 is more specific because it directly addresses the termination of Department employees.

¶17. King next asserts that the statutes should be read *in pari materia*, which means that the Court "generally will read the statutes[, upon the same subject] together to interpret them harmoniously." **Brown v. State**, 102 So. 3d 1087, 1092 (¶ 23) (Miss. 2012). She claims that the statutes can be read harmoniously by allowing the Adjutant General to make the employment decision, but then allow the terminated employee to be heard and present a defense to the Board. However, King's interpretation does not give actual effect to the Board's statutes in that no remedy is available for the Board to provide King after completion of a hearing–a fact which King acknowledged in her brief and at oral argument.[2] Based on the language of the Department's statutes giving the Adjutant General, subordinate only to the Governor, the discretion to hire and terminate the Department's employees, the Board could not require the Adjutant General to reverse his decision and rehire King.

¶18. Finally, King claims that Sections 25-9-107 and 25-9-129 were enacted, amended, or reaffirmed later than Section 33-3-11; thus, the statutes she cites are the most recent and, therefore, controlling. However, in light of the other rules of statutory construction that weigh in favor of the Department, we are not persuaded by King's argument.

## CONCLUSION

¶19. While the Legislature has not excluded the Department's employees from being defined as "state service," we must affirm the Board's decision to dismiss King's appeal, as

---

[2] According to King, she "is not suggesting that the Adjutant General cannot fire [her] for whatever reason he wants."

11

the Adjutant General has discretion, given by statute, in the hiring and the termination of the Department's employees; thus, the Board does not have ability to review or adjust his decisions.

¶20. **AFFIRMED.**

**RANDOLPH AND KITCHENS, P.JJ., KING, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**