# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-SA-01206-COA

ST. DOMINIC-JACKSON MEMORIAL                    APPELLANT
HOSPITAL

v.

MISSISSIPPI DIVISION OF MEDICAID AND            APPELLEES
DREW SNYDER, IN HIS OFFICIAL CAPACITY
AS EXECUTIVE DIRECTOR OF MISSISSIPPI
DIVISION OF MEDICAID

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/2019 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | SHELDON G. ALSTON JONATHAN ROBERT WERNE |
| ATTORNEYS FOR APPELLEES: | JANET McMURTRAY SAMUEL P. GOFF LAURA L. GIBBES |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED -11/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Subsequent to the closure of Regency Hospital of Jackson ("Regency"), a long-term acute care hospital that operated within St. Dominic-Jackson Memorial Hospital ("St. Dominic"), the Mississippi Division of Medicaid ("DOM") was faced with the issue of calculating the statutorily imposed annual hospital assessment for the fiscal year 2017.  St. Dominic appealed the decision of DOM to the Hinds County Chancery Court for the First

Judicial District. The chancellor upheld DOM's decision, and St. Dominic appeals. Finding that DOM exceeded its statutory authority, we reverse and render.

**FACTS**

¶2. Medicaid is a program that provides medical assistance for the needy, established under Title XIX and Title XXI of the federal Social Security Act. Each participating state designs and administers its own version of Medicaid through a "State Plan" and associated statutes and regulations—all of which must comply with the federal statues and rules setting forth requirements for participation in the Medicaid program. Because it is a combined state/federal entitlement program, Medicaid is jointly financed by the federal government and participating states. In Mississippi, the Medicaid program is administered by DOM, which is a division of the Office of the Governor of the State of Mississippi. *See* Miss. Code Ann. § 43-13-103 (Rev. 2009).[1]

¶3. States incur costs under their Medicaid programs by making payments to service providers, i.e., hospitals, doctors, nursing homes, et cetera, and by performing administrative activities related to Medicaid, i.e., eligibility determinations, managed care, et cetera. The federal government reimburses states for a portion of these costs. The federal government's share of Medicaid expenditures is called the federal medical assistance percentage ("FMAP"), which varies by state according to each state's per capita income.

¶4. Mississippi Medicaid program is statutorily mandated to participate in two federal programs that provide supplemental payments to Mississippi hospitals that treat Medicaid

---

[1] For purposes of this opinion, the Mississippi Code, as it existed in 2015, is controlling.

patients and other needy patients—the Disproportionate Share Program ("DSH") and the Medicare Upper Payment Limits Program ("UPL"). In order to acquire the state funds necessary to receive the federal matching funds for these programs, each fiscal year the State imposes an annual assessment on all non-exempt hospitals licensed in the state. Miss. Code Ann. § 43-13-145(4) (Rev. 2009). This annual assessment is referred to as the "Hospital [A]ssessment," the calculation of which is addressed in Mississippi Code Annotated section 43-13-145(4)(a)(i).

¶5. Hospitals in Mississippi are licensed by the state Department of Health ("MSDH"). Any health care facility participating in Medicare and Medicaid programs must be certified through the MSDH. Approval from the MSDH is also needed for a variety of hospital-related issues, including expansion of facilities, acquisition of new equipment, opening of new facilities, et cetera. As a condition of receiving Medicaid funds, providers must enter into an agreement with the MSDH. St. Dominic entered into such an agreement which was in place for the time period relevant to this controversy.

¶6. On February 15, 2005, St. Dominic (a licensed hospital) and Regency entered into a lease agreement under which St. Dominic leased thirty-six acute-care beds and related space to Regency for the establishment and operation of a separately licensed hospital. The new hospital was to operate within the existing confines of St. Dominic. Regency was issued a Certificate of Need ("CON") by the MSDH on August 25, 2005, for the establishment of a long-term acute-care hospital within St. Dominic. At all times, St. Dominic and Regency had separate licenses and were assessed and paid separate Hospital Assessments.

¶7.     Regency closed the hospital inside St. Dominic on August 2, 2016, and the lease agreement terminated on September 30, 2016. On September 8, 2016, St. Dominic filed a Notice of Intent to Change Ownership ("CHOW") with the MSDH, enclosing a copy of Regency's CON from 2005. St. Dominic also indicated that the CHOW was being submitted pursuant to an "Expiration of Lease Agreement." St. Dominic was informed by MSDH that it did not need to submit a new CON and that the CHOW would be approved. A new license, including the thirty-six beds previously leased by Regency and the 417 beds also owned by St. Dominic (for a total of 453), was issued with an effective date of October 1, 2016.

¶8.     On November 21, 2016, DOM sent all non-exempt Mississippi hospitals its preliminary calculations for the fiscal year 2017 Hospital Assessment. Due to an error, an updated calculation was sent one week later. In its calculation, DOM added a portion of Regency's non-Medicare hospital inpatient days to those of St. Dominic. On December 2, 2015, St. Dominic requested that DOM remove Regency's non-Medicare hospital-inpatient days and recalculate its assessment. Stating that the transaction between St. Dominic and Regency constituted a merger under Mississippi Code Annotated section 43-13-145(4)(e) (which St. Dominic denies), DOM declined to re-assess its prior calculation of the 2017 Hospital Assessment. St. Dominic requested an administrative hearing regarding DOM's decision, which was denied.[2]

¶9.     St. Dominic filed an appeal with the Chancery Court for the First Judicial District of

---

[2] The computation and implementation of hospital assessments are not administratively appealable under the Mississippi Administrative Code, Division of Medicaid, Title 23, Part 300.

4

Hinds County Mississippi, on March 3, 2017. The chancellor ultimately ruled in favor of DOM, finding that (1) the termination of the lease between St. Dominic and Regency constituted a merger through which the Regency beds/assets changed ownership; (2) the terms of the participation agreement applied such that St. Dominic was responsible for payment of the Hospital Assessment relating to the Regency facilities it assumed under the CHOW; and (3) the 2017 Hospital Assessment was properly calculated because DOM is legislatively mandated to maximize all federal funds, thus DOM must calculate the Hospital Assessment in a manner that maximizes state funds, as it is the state funding component that is used to draw down matching federal funds. St. Dominic filed an appeal on July 30, 2019.

## STANDARD OF REVIEW

¶10. This Court's review of agency interpretation of a statute is de novo. *King v. Miss. Military Dep't.*, 245 So. 3d 404, 407-08 (¶¶7-12) (Miss. 2018). "Statutory interpretation is appropriate when a statute is ambiguous or silent on a specific issue." *Lewis v. Hinds Cnty. Circuit Court*, 158 So. 3d 1117, 1120 (¶6) (Miss. 2015) (citation omitted). In either case, the ultimate goal is to discern the legislative intent. *Allred v. Yarborough*, 843 So. 2d 727, 729 (¶6) (Miss. 2003) (citing *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992)).

¶11. "On appeal, the Court reviews the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." *King*, 245 So. 3d at 407 (¶7) (citing *Watkins Dev. LLC v. Hosemann*, 214 So. 3d 1050, 1053 (¶15) (Miss. 2017)).

5

**DISCUSSION**

### I. Whether the Department of Medicaid's calculation of the Hospital Assessment with regard to St. Dominic can be upheld.

¶12. The Department of Medicaid argues that in order to maximize federal matching funds for the DHS and UPL programs as required by Mississippi law, DOM must necessarily maximize the state's matching funds generated by the Hospital Assessment. Thus, in order to meet its maximization mandate, when a hospital ceases operation mid-fiscal year, DOM is required to collect the assessment attributable to the non-operational period by either (1) collecting the assessment from any healthcare entity that continues operation of the closed entity's facilities, or (2) if no other entity continued operation of the hospital or its facilities, then DOM must include the assessment for the non-operational period in a recalculation of the "Rate" to be applied to all hospitals in the non-exempt pool. Based on the theory that St. Dominic is continuing operation of Regency's closed facilities, DOM determined that St. Dominic's Hospital Assessment should be increased to reflect the non-operational period.

¶13. St. Dominic states that "maximize," as used in the statutes cited below by DOM, does not mean that "all" federal funds must be drawn down. It also argues that because no statute sets forth a method of calculation to be utilized in the instance presented here, DOM cannot fill in the statutory gap to remedy a perceived shortfall when a hospital ceases operation mid-fiscal year. St. Dominic maintains that DOM improperly added non-Medicare hospital inpatient days from Regency to its Hospital Assessment, resulting in a higher assessment than St. Dominic believes it owes.

¶14. Although "maximize," for purposes of Medicaid, is not defined by a statute or

6

elsewhere in Mississippi jurisprudence, DOM cites to the following regarding the mandatory maximization of federal funds:

> (a) [T]he division shall make additional reimbursement to hospitals that serve a disproportionate share of low-income patients and that meet the federal requirements for those payments as provided in Section 1923 of the federal Social Security Act and any applicable regulations. **It is the intent of the Legislature that the division shall draw down all available federal funds** allotted to the state for disproportionate share hospitals. . . .
>
> (b) The division shall establish a Medicare Upper Payment Limits Program, as defined in Section 1902(a)(30) of the federal Social Security Act and any applicable federal regulations for hospitals. . . . The division shall assess each hospital . . . for the sole purpose of financing the state portion of the Medicare Upper Payment Limits Program. The hospital assessment shall be as provided in Section 43-13-145(4)(a). . . .

Miss. Code Ann. § 43-13-117(18)(a)-(b) (Rev. 2009) (emphasis added).

> [E]ffective for state . . . fiscal year 2017 . . . an annual assessment on each hospital licensed in the state is imposed on each non-Medicare hospital inpatient day as defined below at a rate that is determined by dividing the sum prescribed in this paragraph (i), **plus the non-federal share necessary to maximize the Disproportionate Share Hospital (DSH) and inpatient Medicare Upper Payment Limits (UPL) payment and inpatient hospital access payments**, by the total number of non-Medicare hospital inpatient days as defined below for all licensed Mississippi hospitals, except as provided in paragraph (d) below.

Miss. Code Ann. § 43-13-145(4)(a)(i) (emphasis added). The Participation Agreement also states that DOM "shall implement DSH calculation methodologies that result in the maximization of available federal funds."

¶15.    Mississippi law clearly sets forth a calculation to be utilized when a hospital subject to the Hospital Assessment "operates or conducts business for only a portion of a fiscal year . . . ." Miss. Code Ann. § 43-13-145(4)(e)(ii). According to the statute, the Hospital

7

Assessment is "adjusted by multiplying the assessment by a fraction, the numerator of which is the number of days in the year during which the hospital operates, and the denominator of which is three hundred sixty-five (365)." *Id.* But no statute sets forth specific procedures for DOM to follow in the event the closure of a hospital results in a shortfall of funds needed for the states to be in a position to draw down the federal match. Nor does Mississippi Code Annotated section 43-13-145(4)(e) address how the Hospital Assessment should be calculated in the event of a Notice of Change of Ownership pursuant to a merger or the provisions of the Participation Agreement.[3]

¶16. The Department of Medicaid is granted wide latitude to "adopt and promulgate reasonable rules, regulations and standards, with approval of the Governor and in accordance with the Administrative Procedures Law, Section 25-34-1.101 et seq. . . . [e]stablishing methods and procedures as may be necessary for the proper and efficient administration of this article." Miss. Code Ann. § 43-13-121(1)(a)(i) (Rev. 2009). St. Dominic counters that according to the rules of statutory interpretation, when there is a specific statute (i.e., Miss. Code Ann. § 43-13-145(4)), "the requirements of the general statute[, Miss. Code Ann. § 43-3-117(1)(18)(a)] should not dictate additional requirements as to which the specific statute is silent." *Lenoir v. Madison County.*, 641 So. 2d 1124, 1130 (Miss. 1994).

¶17. Even if the legislative mandate to maximize funds is held to be a directive that DOM must draw down all federal matching funds, DOM failed to comply with Mississippi Code

---

[3] It should be noted that the Legislature amended this statute in 2018 in an apparent attempt to give DOM flexibility in assessing hospitals that have undergone a "change of ownership." Miss. Code Ann. 43-13-145(4)(e)(iii) (Supp. 2018).

Annotated section 43-13-121(1)(a)(i). The Legislature, in Mississippi Code Annotated section 43-13-145(4), specifically articulated a method for DOM to calculate the Hospital Assessment. The Hospital Assessment "is imposed on each non-Medicaid hospital inpatient day." Miss. Code Ann. § 43-13-145(4)(a)(i). And "'[n]on-Medicare hospital inpatient stay' means total hospital inpatient days . . . less Medicare inpatient days . . . **from the hospital's [2013] Medicare cost report . . . on file with CMS.**" Miss. Code Ann. § 43-13-145(4)(b)(ii)(1) (emphasis added). Furthermore, the Legislature also specified how to assess hospitals that close mid-fiscal year. Miss. Code Ann. § 43-13-145(4)(e). As no method for allocation of an assessment shortfall resulting from a hospital closing mid-fiscal year has been set forth, DOM is responsible for seeking approval from the Governor and adhering to the Administrative Procedures Law for any new rules it wishes to implement. Miss. Code Ann. § 43-13-121(1)(a)(i). The action of DOM in implementing a new rule regarding the Hospital Assessment was beyond the power of the agency and cannot stand. *See Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.*, 593 So. 2d 997, 1000 (Miss. 1991) (An agency is not permitted to adopt rules or regulations that exceed authority granted by statute.).

¶18. We find this issue to be dispositive of the dispute between the parties; however, we have chosen to include a discussion of the two remaining issues for the benefit of the bar, the public, and the medical community.

**II. Whether the termination of the lease between St. Dominic and Regency constitutes a merger for purposes of section 43-13-145(4)(e).**

¶19. Regency closed its doors (with regard to the St. Dominic facility) in August 2016, and

9

its lease terminated at the end of September 2016. St. Dominic argues that there was no merger upon the termination of the lease. According to St. Dominic, it did not acquire, assume ownership of, or take over operation of Regency or any of Regency's employees. St. Dominic further states no purchase was made of any Regency assets or records, and the equipment and facilities simply reverted to St. Dominic. Additionally, no merger agreement was entered into between St. Dominic and Regency.

¶20. The Department of Medicaid maintains that "[u]nder Mississippi health care law, a Notice of Change of Ownership like the one filed by St. Dominic operates as a merger." In support of the merger, DOM also argues that St. Dominic attached its entire 2005 application (CON) to the CHOW, as well as the fact that St. Dominic admitted that the lease termination resulted in additional beds reverting to it.

¶21. Section 43-13-145(4)(e) of the Mississippi Code is entitled "Multihospital systems, closure, merger and new hospitals." Nowhere in this Code section or elsewhere in Title 43 is "merger" defined. Neither party points to a statute or caselaw in support of its argument regarding merger—DOM simply states that the subject transaction is a merger. The Court affords no deference to an agency's interpretation of a statute governing the agency's operation. *King*, 245 So. 3d at 408 (¶12). In this instance, we are to be guided by legislative intent. *Allred*, 843 So. 2d at 729 (¶6). However, there is no indication of legislative intent, nor does Mississippi law address what constitutes a merger in a similar context.

¶22. The Legislature amended this Code section, and it became effective July 1, 2018. The term "merger" remains undefined in the current version of the statute, and we do not agree

that a reversion is necessarily the same as a merger. Pursuant to our findings here, it is unnecessary for this Court to define "merger" to resolve the issue currently before us.

### III. Whether St. Dominic is responsible for the disputed Hospital Assessment pursuant to the terms of the Participation Agreement.

¶23. Pursuant to the Participation Agreement St. Dominic contracted with DOM for the time period relevant to this controversy, St. Dominic agreed to the following terms as a condition of receiving Medicaid funds:

> In case of institutional providers, where there is a change of ownership of the facility, the new owner, upon consummation of the transaction effecting the change of ownership, shall as a condition of participation [in the Medicaid program], assume liability, jointly and severally with the prior owner for any and all amounts that may be due or become due to the Medicaid program, and such amounts may be withheld from the payment of claims submitted when determined.

¶24. St. Dominic maintains that the termination of the lease did not give rise to a change of ownership; rather, the facilities and equipment that were already owned by St. Dominic simply reverted to it. St. Dominic also agrees that the MSDH said no CON was needed and that the face of the CHOW further specified that it was an "Expiration of Lease Agreement." Thus, according to St. Dominic, this provision of the Participation Agreement was not invoked.

¶25. The Department of Medicaid states that the Participation Agreement is a contractual obligation brought about by a change of ownership. The Department of Medicaid further argues that the CHOW filed with the MSDH gives clear notice of St. Dominic's intent to change ownership of the former Regency hospital because the form itself is called "Notice of Intent to Change Ownership." The Department of Medicaid also maintains that even if

11

there was no merger, based on the CHOW and the fact that St. Dominic immediately requested a license for and began using the space and equipment it had previously leased to Regency, the Participation Agreement is binding on St. Dominic.

¶26. As with the prior section, neither party sets forth any statute or case law that governs this issue. We note that federal Medicaid regulations do not provide a definition of a change of ownership. Carol Colborn-Lopere et al., Health Care Fin. Transactions Man. § 8:12 (2020 ed.). Most states, including Mississippi, follow the Medicare definition of change of ownership. *Id.* As set forth in our federal regulations, "[t]he lease of all or part of a provider facility constitutes a change of ownership of the leased portion." 42 C.F.R. §489.18 (a)(4) (2019). This regulation is specifically adopted in the Participation Agreement as drafted by DOM and approved by the Governor of Mississippi. The question then becomes whether the inverse is also true.

¶27. Regency closed the hospital inside St. Dominic on August 2, 2016, and the lease agreement terminated on September 30, 2016. At St. Dominic's request, a new license, including the thirty-six beds previously leased by Regency and the 417 beds also owned by St. Dominic (for a total of 453), was issued with an effective date of October 1, 2016. We find it important that Regency paid its Hospital Assessment for the fiscal year 2017 (prior to the change of ownership) to DOM. The only assessment at issue is the unpaid portion for the part of the year when St. Dominic indisputably was using the equipment and the facilities that were formerly leased by it to Regency.

¶28. Agency interpretation of a statute, administrative regulation, or rule governing the

12

agency's operation is reviewed de novo, but the degree of deference the Court will afford the agency's interpretation of the law hinges on whether the agency is interpreting a statute or its own administrative regulation or rule. *King*, 245 So. 3d at 407-08 (¶¶7-12). Great deference is afforded to the agency's interpretation of its own rules and regulations. *Crossgates River Oaks Hosp. v. Miss. Div. of Medicaid*, 240 So. 3d 385, 388 (¶14) (Miss. 2018). Based on the foregoing, we find that DOM's interpretation of its own administrative regulation (adopting section 489.18(a)(4)) to mean that a lease termination constitutes a change of ownership was not arbitrary, capricious, or an abuse of discretion.

¶29.    Regency paid what it owed under the Hospital Assessment for the fiscal year 2017. Although the Participation Agreement provides that a new owner "shall . . . assume liability, jointly and severally, with the prior owner for any and all amounts that may be due or become due to the Medicaid program," this does not address the question of whether Regency or St. Dominic owes any additional assessment for Fiscal Year 2017. Thus, even though we hold the Participation Agreement to bind the parties, the issue of proper calculation of the Hospital Assessment was necessarily addressed above.

¶30.    As discussed above, the action of DOM in implementing a new rule regarding the Hospital Assessment was beyond the power of the agency and cannot stand. See *Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.*, 593 So. 2d at 1000 (An agency is not permitted to adopt rules or regulations that exceed authority granted by statute.). The chancellor's order should be reversed and a new order rendered consistent with this opinion.

¶31.    **REVERSED AND RENDERED.**

**WILSON, P.J., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., NOT PARTICIPATING.**